FILED

## UNITED STATES DISTRICT COURT

### of the

### EASTERN DISTRICT OF VIRGINIA

2011 AUG 31  P 4: 41

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| Cynthia G. Smith, Esq. | : | Civil Action No.: 1:11 cv 922 |
| *Plaintiff* | : | Jcc/IDD |
| | : | |
| | : | |
| | : | |
| | : | |
| v. | : | **A JURY TRIAL IS DEMANDED.** |
| | : | |
| | : | **COMPLAINT:** |
| | : | |
| | : | **TORTUOUS INTERFERENCE WITH** |
| | : | **CONTRACTUAL RELATIONS** |
| | : | **AND/OR WITH A REASONABLE** |
| | : | **BUSINESS ESPECTANCY;** |
| | : | |
| | : | **STATUTORY BUSINESS** |
| Timothy Purnell | : | **CONSPIRACY;** |
| | : | **AND** |
| *Defendant* | : | **CIVIL CONSPIRACY** |
| | : | |
| | : | |
| | : | |

**PLAINTIFF:**

Cynthia G. Smith

1918 Trenton Place (Temporary Address)

Washington D.C. 20020

702.599.6222

**SERVICE BY U.S. MARSHALL REQUESTED.**

**SERVE:**

TIMOTHY PURNELL, ESQUIRE

c/o: **Coon and Purnell, PC**
9214 Center Street, Suite 101
Manassas, VA 20110

Main: 703-368-9196

**CYNTHIA G. SMITH, ESQUIRE**

**v.**

**TIMOTHY PURNELL, ESQUIRE**

**CASE NUMBER: _____**

## COMPLAINT

## COUNT I

## TORTIOUS INTERFERENCE WITH CONTRACT AND/OR WITH REASONABLE BUSINESS EXPECTANCY

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Cynthia G. Smith[1] is a citizen of the United States who is a domiciliary of Washington, D. C.

2.     Defendant Timothy Purnell is a citizen of the United States who resides in Virginia and is a domiciliary of Virginia.

3.     Accordingly, it is proper for this court to exercise diversity jurisdiction over the parties and subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

4. Venue is also proper in the United States District Court for the Eastern

---

[1] Plaintiff is an "eggshell plaintiff" who has endured an unusual series of financial losses which arose because her decision to trust God with the size of her family and because of a subsequent marital separation notwithstanding her mid-life enrollment in law school and 2006 licensure to practice law by Virginia.

District of Virginia.

## **AFFIDAVIT OF AMOUNT IN CONTROVERSY**

Plaintiff hereby avers, by means of her signature provided below, under penalty of perjury, that the matter in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs.

_____

Cynthia G. Smith, Pro Se

1.  On August 25, 2009, Plaintiff entered an agreement to represent Robert Wiese, Margaret Wiese, and Kelly Wiese in both a criminal matter and a civil matter, both of which related to an ongoing dispute with Mr. and Mrs. David Greb, a married couple that lived next door to the Wiese family at the time.

2.  Prior to retaining Plaintiff to represent them, the Wiese family had repeatedly sought assistance in the matter from the Fairfax County Police Department but received little, if any, assistance.

3.  The criminal matter was heard in the Fairfax County General District Court.

4.  The civil matter was heard in the Fairfax County Circuit Court.

5.    Although the criminal matter was resolved in their favor, the Wiese family were treated in an extremely unfair manner by the court in the civil matter.

6.    The gist of the dispute may be understood by viewing a video clip produced by Plaintiff for submission to the court in the lawsuit. The video clip is attached as Exhibit A and incorporated by reference into the complaint as though fully set forth herein.

7.    The Grebs were also represented by two attorneys, both of whom generated a lot of work.

8.    In response to the Wiese's stated concern that they might need to hire a second attorney to keep up and their stated concerns about their ability to meet the financial burden of the litigation, Plaintiff unwisely agreed to allow Clients to pay only one half of the amount owed each month, while the Clients agreed to waive their right to formal billing statements and any unnecessary services they had a right to receive, and that they would pay the entire amount due at the end of the litigation.

9.    By March 1, 2009, The Greb family moved away.

10.   Over time, based on her analysis of the rulings that came forth, Plaintiff came to believe that the opponent's attorneys had unlawfully exchanged valuable consideration within the court system in order to achieve a favorable result for their clients.

11.    On or about March 20, 2009, Plaintiff discussed with Robert Wiese the fact that the rulings being entered against them by the Circuit Court were unusually unfair and strangely consistent.

12.    At that time, Plaintiff strongly urged Mr. Wiese to non-suit the lawsuit and to: 1) either employ alternative dispute resolution to negotiate a resolution of their complaint against the police department for failing to protect them; or 2) to simply forgive their neighbor's offences against them since the neighbors had moved away and there was little possibility that the offenses would recur.

13.    At that time, Robert Wiese stated: "I do not want to forgive. I want revenge."

14.    At that time, Robert Wiese also stated: "Cynthia, as an attorney you are smart and hard-working. However, you are very religious and we think that you are too honest to be an attorney. Our opponents have hired two of the dirtiest, filthiest, most low-down attorneys available and we think that we want to hire the dirtiest, filthiest, most low-down attorneys that we can find. They are winning because they are cheating and we will have to do the same thing if we want to win."

15.    On or about May 1, 2009, David Greb filed a separate lawsuit against Robert Wiese.

16.    On or about June 3, 2009, Robert Wiese, Margaret Wiese, and Kelly Wiese retained Timothy Purnell, Esquire, hereinafter Defendant, to represent them but did not tell Plaintiff about the new lawsuit or the new attorney.

17.    Based on subsequent statements made to Plaintiff by Defendant, the Wiese family retained Defendant to: 1) conclude their lawsuit against the Grebs; 2) to assist the Wiese family in their effort to obtain legal representation in the new lawsuit through their homeowner's insurance, and 3) to find a way to avoid paying Plaintiff the amount due under their contract with her.

18.    On or about June 6, 2009, Plaintiff requested payment in full from Robert Wiese in the amount of $30,000.00.

19.    In response to this request, Mr. Wiese stated that he did not intend to pay the amount due, that he had spoken to another attorney about the overdue amount and that Defendant had advised him to submit to the matter to the Virginia State Bar's fee dispute resolution program where he was likely to be awarded a reduction of the amount due.

20.    Plaintiff asked Mr. Wiese to explain to her what grounds he would present to the Bar to explain why he should not pay the amount due.

21.    Mr. Wiese stated: "I don't have a reason right now but by the time I have to provide them with a reason I will think of something."

22.    Plaintiff told Mr. Wiese that she was unwilling to submit the matter to the fee dispute program knowing in advance that he was going to conjure up a reason for not paying the bill.

23.    On or about June 15, 2009, Defendant contacted the Plaintiff by email and by telephone and stated that the Wiese family had retained him to "conclude" the first lawsuit by obtaining a non-suit on their behalf.

24.    Defendant did not file a Motion for Substitution or Addition of Counsel with the Fairfax County Circuit Court.

25.    Defendant did not file a Motion for Addition of Counsel with the Fairfax County Circuit Court.

26.    Defendant did not enter his appearance with the Court.

27.    During the telephone call with Defendant, Plaintiff offered to file a Motion to Withdraw as Counsel.

28.    Defendant stated that his clients did not want the Plaintiff to file a Motion to Withdraw as Counsel.

29.    Instead, Defendant stated the Wiese family wanted Plaintiff to complete the tasks needed to enter the non-suit.

30.    Defendant stated that he was aware of the Smith-Wiese contract; that he knew that the Wiese family owed the Plaintiff a significant amount of money, that it was wrong for them not to pay the Plaintiff the money they owed her, and that "there is never an excuse for not paying what you owe".

31.    Defendant stated that he would arrange for Plaintiff to "get paid in full" including payment for the work needed to obtain a non-suit, if she agreed to complete the tasks required to obtain the non-suit.

32.    Defendant represented to Plaintiff that he would "get her paid in full" in order to induce her to complete the tasks needed to obtain a non-suit for the Wiese thereby enabling Defendant to get paid for the performance of the tasks while also avoiding involvement in a representation that had consisted of at

least two legally unjustifiable judicial orders and that might and did involve yet another legally unjustifiable judicial order during the non-suit phase.

33.   At the time Defendant represented to Plaintiff that he would "get her paid in full" in order to induce her to complete the tasks needed to obtain a non-suit for the Wiese he had no intention of getting her paid in full because he had been asked to assist the Wiese family in avoiding payment to Plaintiff and, further, because he had agreed to do so.

34.   By means of these misrepresentations, Defendant obtained the value of Plaintiff's labor while protecting himself from a possible loss of respect in the eyes of the Wiese family if and when the Court acted errantly.

35.   Defendant stated that Plaintiff's expectation of getting paid in full was reasonable.

36.   In fact, it was Defendant's intention to disturb the Smith-Wiese business contract by helping the Wiese family to find a way to avoid paying the amount due under their contract with Plaintiff.

37.   Defendant also stated that he had advised the Wiese family not to pay under the contract because Plaintiff had not presented them with a detailed billing statement but that they would pay if the Plaintiff prepared a detailed Billing Statement and completed the tasks needed to obtain a non-suit on the Wiese family's behalf.

38.   By requiring the Plaintiff to continue performing the work needed to complete the representation while receiving payment from the Wiese family for

the performance of the work, Defendant interfered with Plaintiff's contract in a manner that was unlawful and tortuous.

39.   By receiving payment for the performance of tasks related to a matter in which another attorney was listed with the court as counsel of record and without Filing a Motion for Substitution of Counsel and/or entering an appearance with the court as counsel of record, Defendant tortuously interfered with the Smith-Wiese contract.

40.   Plaintiff did complete the tasks needed to obtain the non-suit and protect the Wiese's rights.

41.   Plaintiff also prepared a detailed billing statement.

42.   From the time she spoke to Defendant, she did not speak directly with the Wiese family again.

43.   On or about __ , the Grebs scheduled a hearing for 11:00 AM, ___, for a Motion to Compel Discovery.

44.   On or about ___, Plaintiff scheduled a hearing for a Motion for Non-suit for 9:00 Am on ___.

45.   On or about ___, less than 48 hours before the hearings were scheduled to occur, the Court left a message on Plaintiff's telephone stating that the judge had rescheduled  the Wiese's non-suit hearing for 11:00  AM so that both motions could be heard together.

46.   Over Plaintiff's repeated objections, the Court granted the Greb's Motion to Compel and $2,000.00 in attorney's fees and then granted the Wiese's motion for a non-suit.

47.    Plaintiff objected to the Court's rescheduling of the hearing and
subsequent rule so strongly and so repeatedly that the Court told her to sit
down and be quiet.

48.    Although notified of the hearings, Defendant did not attend.

49.    Although notified of the hearings, no member of the Wiese family
attended.

50.    Immediately after the hearing, Plaintiff stopped by the law library and
found a citation to case law which clearly established the Court's error.

51.    Plaintiff immediately informed Defendant of the court's ruling via
telephone and via email, attached the citation to the email, and asked
Defendant to inform the Wiese family of their right to appeal the order.

52.    After completing all tasks required for the entry of a non-suit, Plaintiff
sought payment for the amount due by sending requests for payment to
Defendant via email.

53.    In an effort to create a record establishing Defendant's awareness of the
damages that would occur if the Wiese's failed to pay the outstanding amount
due, Plaintiff also repeatedly informed Defendant via email that she would
incur severe financial damages if the Wiese family further postponed payment
in full.

54.    On or about August 18, 2011, Defendant sent Plaintiff an email holding
her responsible for the errant rulings of the Circuit Court (which she believed
to be the consequence of case fixing).

11

55. This email is attached as <u>Exhibit B</u> and incorporated by reference into this complaint.

56. Plaintiff telephoned Defendant and stated unequivocally that the Wiese family had been the victims of case-fixing.

57. On or about _September 1, 2009, Defendant informed the Plaintiff that the Wiese family were only willing to pay $5,000.00 of the amount that was owed and that he had prepared a release to that effect.

58. Defendant also stated that he was holding a check from the Wiese family for $5,000.00 which he would release to Plaintiff after she signed a release excusing the Wiese family from the obligation to pay the remainder of the amount owed under the contract.

59. By inducing Plaintiff to perform tasks under the contract in exchange for full payment under the contract notwithstanding his then present knowledge that it was the Wiese's goal to avoid paying Plaintiff the full amount owed; by receiving payment from the Wiese family for the completion of tasks pertaining to obtaining a non-suit that Plaintiff performed; by helping the Wiese family to achieve their goal not to pay Plaintiff the amount due under the contract by promising that the Wiese family would pay even though he knew that they did not want to pay; by persuading Plaintiff to delay her demand for payment so as to create a financial emergency; helping the Wiese family to achieve a breach of contract, by drafting the release and by managing the termination of the contract, Defendant induced the breach as well as the termination of Plaintiff's expectancy regarding full payment under the contract.

60.   As a separated wife of a former pastor who was providing the only means
of support for her children, including two college students, Plaintiff's finances
were so unstable that she stood to lose her rental home, her business, her
automobile and to suffer irremediable damage to her credit standing if she was
not paid such a substantial amount.

61.   Between September 1, 2009 - September 7, 2009 Plaintiff repeated stated
via email that even if she did agree to sign the release she would be doing so
under duress.

62.   On or about September 8, 2009, Defendant asked Plaintiff to provide him
with a copy of any written contract she had entered with the Wieses.

63.   Plaintiff provided Defendant with a copy of the written contract via email.

64.   Notwithstanding his awareness of Plaintiff's distressed financial state,
her statement that any agreement she entered into under such circumstances
would constitute duress, and his receipt of a copy of the written contract,
Defendant continued to facilitate the termination of the contract.

65.   Approximately twenty-four hours later, acting under duress, Plaintiff
accepted the $5,000.00 payment and signed a release, which is attached as
Exhibit C and incorporated by reference into this Complaint.

66.   Plaintiff used the $5,000.00 to make what would be the last payment she
would be able to make on her residential lease, her business lease, and her
automobile.

67.   Where Defendant's offer was to get the Plaintiff "paid in full" if she
obtained the non-suit, the monetary value of the agreement between

Defendant and Plaintiff, whether enforceable or not, was the amount due by the Wieses under their contract with Plaintiff plus the value of Plaintiff's work during the six-week period.

68.    As a direct and proximate result of the breach, Plaintiff was forced to close her virtual office in Fairfax City; Plaintiff was forced to close her legal practice; Plaintiff was forced to move out of her rental home; Plaintiff was forced to sell her automobile; Plaintiff suffered irreparable harm to her credit standing; Plaintiff's email records, including some of the records she had created in order to prove Defendant's knowledge of her circumstances, were lost when Plaintiff was unable to pay the amount due on that account; Plaintiff defaulted on a consumer loan;  Plaintiff has suffered harm to her reputation; Plaintiff has been unable to earn income from other sources; Plaintiff's underage children suffered harm to their educational pursuits; Plaintiff's adult children have been forced to house, feed, and other wise provide for Plaintiff. Plaintiff has suffered emotional suffering.

69.    Defendant did have a right to engage in freedom of action as a business person by accepting an offer of representation by the Wiese family pertaining to the completion of tasks required to non-suit the Wiese's lawsuit as counsel for the Wiese family.

70.    However, in order to do so, Defendant was required to file a Motion for Substitution of Counsel and/or a Motion of Addition of Counsel and enter his appearance with the Court and take responsibility for the occurrences related to the non-suit.

71.   Defendant did not have a right to interfere in the matter by negotiating the entry of a non-suit at a time he was not counsel of record in the matter.

72.   Defendant did not have a right to fraudulently induce Plaintiff to complete such tasks while he was being paid for them.

73.   Nor did Defendant have a right to falsely state that the Wiese family would pay the full amount owed in order to induce Plaintiff to complete the tasks when he knew that the Wiese family's goal, and the stated goal of the representation, was to avoid paying the amount due to Plaintiff under the contract.

74.   Therefore, Defendant's conduct did not constitute legitimate business competition.

75.   Although the Wiese family sought Defendant's advice as to how to they could avoid paying the amount due under the contract, Defendant knew that he could not lawfully or ethically advise the Defendants as to how they could perpetrate an unlawful act and/or help the Defendants to perpetrate a fraudulent act.

76.   By proactively making promises he knew that the Wieses did not intent to keep, Defendant did assist in the perpetration of a fraudulent act.

77.   Defendant's conduct was not privileged.

78.   Defendant's conduct was not justified.

79.   Defendant's conduct was unlawful.

80.    By acting with the intention to help another withholding payment for

services rendered under a contract from Plaintiff, Defendant's conduct

overstepped the boundaries of freedom of action.

81.    Defendant acted notwithstanding his awareness of circumstances which

would cause severe financial consequences to Plaintiff and notwithstanding

his awareness that Plaintiff would be severely harmed if these consequences

occurred.

82.    By advising the Wiese family regarding the non-suiting of the first lawsuit

without assuming lawful authority over the matter; by advising the Wiese

family about their performance under Plaintiff's contract with them

notwithstanding his awareness that the Wiese family was unlikely to pay

Plaintiff and that Plaintiff was likely to suffer severe financial damage if the

Wiese family refused to pay the full amount due; Defendant acted consciously

in disregard of Plaintiff's rights and with reckless indifference to the

consequences, with the Defendant aware from his knowledge of existing

circumstances and conditions that his conduct probably would cause injury to

Plaintiff.

83.    Accordingly, Defendant's conduct warrants the imposition of punitive

damages.

84.    Defendant's receipt of payment for rendering legal advice to the Wieses=

family about obtaining a non-suit in the first lawsuit, without: 1) filing a

Motion for Substitution of Counsel or, in the alternative, for Addition of

Counsel, with the Court; 2) allowing Plaintiff to file a Motion to Withdraw as

Counsel with the Court; or 3) entering his appearance with the Court entitles Plaintiff to judgment.

## COUNT II

### STATUTORY BUSINESS CONSPIRACY

### PURSUANT TO VIRGINIA CODE 18.2 - 499, 500.

85.   Plaintiff repeats and incorporates by reference paragraphs 1 – 85 as though fully set forth herein.

86.   By agreeing to assist the Wiese family in an unlawful goal, i.e. the avoidance of payment to Plaintiff for work already completed under a contract, Defendant performed an unlawful and overt act in furtherance of the conspiracy.

87.   In the alternative, by agreeing to assist the Wiese family to achieve a lawful goal, (i.e. the avoidance of payment to Plaintiff for work completed under a contract) in an unlawful way (i.e. by using deceit to persuade Plaintiff to complete additional tasks under the contract in exchange for consideration Defendant knew would not be forthcoming), Defendant performed an unlawful and overt act in furtherance of the conspiracy.

88.   By making a promise he did not intend to keep at the time the promise was made, an act that is tantamount to fraud, Defendant performed an unlawful and overt act in furtherance of the conspiracy.

89.   Where Defendant did not properly obtain permission from the Court to represent the Wiese family in the first lawsuit, all of his involvement in the first lawsuit was unlawful and, as such, constituted a tortuous interference

17

with contract and/or reasonable business expectancy and an unlawful and overt act in furtherance of the conspiracy.

90.   Defendant consciously and purposefully intended to control the outcome of the first lawsuit so as to achieve his clients' goals without lawfully assuming responsibility for the outcome.

91.   Therefore, Defendant acted intentionally, purposely, and without legal justification.

92.   By deceiving Plaintiff into thinking that she would be paid in full when he knew that she would not be paid in full, notwithstanding his awareness of Plaintiff's right to be paid in full, and notwithstanding his awareness that Plaintiff would suffer harm to her business if she was not paid in full, Defendant did anticipate that Plaintiff would suffer harm to her business in the form of lost profits.

### DAMAGES

93.   As a direct and proximate result of the Defendants' actions, which resulted to loss of income at a time Plaintiff could not sustain her business in the absence of such income.  Due to the losses she sustained as a result of Defendant's conduct, Plaintiff, in effect, closed her law practice on or about October 1, 2009 and formally closed her virtual office in August, 2010. Plaintiff has suffered loss of income because she closed her law practice. Plaintiff has also suffered loss of professional reputation.

### CIVIL CONSPIRACY

94.    Plaintiff repeats and incorporates by reference paragraphs 1 through 95
as though fully set forth herein.

95.    Where Defendant's actions also constitute a civil conspiracy, Plaintiff
asserts a claim for civil conspiracy.

## PRAYER FOR RELIEF

Plaintiff respectfully asks the Court to enter judgment in her favor against
Defendant for Tortuous Interference with Contract and/or Reasonable
Business Expectancy and to award her direct and compensatory damages in
the amount of $1,000,000.00 and punitive damages in the amount of
$350,000.00. Plaintiff respectfully asks the Court to enter judgment in her
favor for Statutory Business Conspiracy for direct and consequential damages
in the amount of $1,000,000.00 and for punitive damages in the amount of
$350,000.00. Plaintiff also asks the Court to allow treble damages under this
court. Finally, Plaintiff asks the Court to enter judgment in her favor for Civil
Conspiracy in the amount of $1,000,000.00 and for punitive damages in the
amount of $350,000.00. Plaintiff also requests interest on the amount of the
judgment, attorneys fees, if applicable, an award of costs, and any other relief
the Court should deem just and appropriate.

Plaintiff requests a jury trial.

Respectfully Submitted,

Cynthia G. Smith, Esquire
1918 Trenton Place
Washington D.C. 20020
703.599.6222

THE LAW OFFICE OF

# CYNTHIA G. SMITH

11350 RANDOM HILLS ROAD, SUITE 800
FAIRFAX, VIRGINIA 22030

TELEPHONE: 703.400.4412
CYNTHIA.SMITH@SOUND-COUNSEL.COM

FAX: 888.689.2927
WWW.SOUND-COUNSEL.COM

## FEE AGREEMENT LETTER

### August 25, 2008

Martha Wiese
5302 Jerell Court
Burke, Virginia 22015

> RE: Civil and Criminal Relief Against David and Mary Greb:

| | |
|---|---|
| Criminal: | Stalking, Assault by Mob; |
| | § 18.2-416. Using Abusive language to another. |
| Civil: | Protective Order; |
| | § 8.01-45. Action for insulting words. |
| | § 8.01-42.1. Civil action for racial, religious, or ethnic harassment, |
| | Private Nuisance: Damages and Injunctive Relief |
| | Intentional Infliction of Emotional Distress; |
| | Defamation |

Dear Mr. and Mrs. Wiese:

This letter confirms your representation by this firm to obtain relief for the maltreatment you have suffered from your neighbors, David and Mary Greb. This letter will confirm our agreement. Please print the letter, sign it and return it at your earliest convenience.

Our representation will include advising, counseling, negotiating, investigating, handling, and litigating this matter.

We will neither represent nor advise any other person in any matter or on any point related to this matter.

Our fee for the work set forth above will be $250.00 an hour, with a retainer of $5000.00 due at the time that the agreement is signed. .

In addition to the fees described above, you, or your guarantors, will be responsible for expenses we incur in connection with this matter. Such expenses may include, among others, copying, delivery, and telephone charges, fees for professional services, and travel expenses. Whenever possible, we will forward bills for any expenses incurred on your behalf directly to you and you agree to make prompt, direct payment to the originator of these bills. If we make payment for you, it will be necessary to reimburse us promptly.

In the event that I am compelled to collect fees, costs, and expenses for services by means of legal process, you agree to pay any and all attorney's fees, costs and/or expenses necessitated thereby, including reasonable attorney's fees for the suit. In such case, you also agree to pay 10% interest on the amount due until full payment has been made.

Your communications with me are protected from disclosure. Your communications with any other person or persons are not. I have advised you not to discuss this matter with anyone except me.

We will expect good communication and cooperation with you in order for us to represent you properly. This means promptly following our requests as to such matters as providing names and addresses of potential witnesses. If there is any change in your address or telephone number, please notify me immediately.

You agree to keep notes regarding information brought to your attention by others, including names and addresses of witnesses, so that you will not have to rely upon memory in connection with your testimony at some later hearing.

We may withdraw from representation in this matter if you: insist upon presenting a claim or defense that is not warranted under existing law and cannot be supported by good faith argument for an extension, modification, or reversal of existing law; personally seek to pursue an illegal course of conduct; insist that the law firm pursue a course of conduct that is illegal or that is prohibited under the Rules of Professional Conduct; render it unreasonably difficult for the firm to carry out its employment; insist that we engage in conduct that is contrary to the judgment and advice of the attorneys but not prohibited under the Rules of Professional Conduct; or deliberately disregard any agreement or obligation to us as to the timely payment of expenses or fees as required by this agreement for services rendered.

If at any time you become dissatisfied with our handling of this matter, you should not hesitate to tell me immediately so we can resolve the problem and maintain a good relationship with you. You may terminate our representation at any time. In the event of termination, you will be responsible for payment of any fees earned or expenses incurred.

We will use our best efforts in representing you in this matter, but you acknowledge that we can give no assurances as to the final outcome.

If the foregoing terms are acceptable, please sign and return one copy of this letter. I look forward to working with you.

THE LAW OFFICE OF CYNTHIA G. SMITH

Date: 9/3/08 _____
Cynthia G. Smith
                                          Attorney

Date: 8-29-2008 _____
Martha V. Weise
                                          Client

Date: 8-29-08 _____
                                          Client

THE LAW OFFICE OF

# CYNTHIA G. SMITH, PLLC

11350 RANDOM HILLS ROAD, SUITE 800

FAIRFAX, VIRGINIA 22030

TELEPHONE: 703.400.4412

CYNTHIA.SMITH@SOUND-COUNSEL.COM

FAX: 888.689.2927

WWW.SOUND-COUNSEL.COM

**CONFIDENTIAL**
September 7, 2009

Timothy M. Purnell
Coon & Purnell
9214 Center St # 1
Manassas, VA 20110-1812

Mr. Purnell:

    Per your request, please find the Wiese Fee Agreement attached. The contract was in my file along with several unsigned fee agreements. Initially, I saw the unsigned fee agreements but not the signed fee agreement.

    I am not able to enter into a settlement agreement with the Wiese family for $5,000.00 because I believe that the Wiese family's offer resembles a type of extortion. After all, the offer, which was unreasonable, was drafted as a direct reply to my emailed statement that I was facing a financial emergency.

    Even so, I would like to fully rescind and renounce any and every attempt I may have made to pressure the Wiese family into paying the fee I am owed against their will, including any threat to file criminal charges, any threat to disclose confidential information, and any other express or implied threat I have communicated to you, to them, or to anyone else during the course of this fee dispute. Nor do I intend to imply that the type of extortion I refer to above rises to the level of criminal activity.

    I do continue to maintain that I will have to disclose the Wiese's statement to me in March 2008 that their primary goal in the Greb litigation was revenge. This disclosure will be necessary even in a breach of contract claim for the following reasons.

    First and foremost, the Wiese family has attempted to justify their willful breach of contract by alleging that my inexperience caused the Court to enter three extremely unjust rulings. The Rules of Professional Conduct expressly allow an attorney to disclose confidential information when doing so is necessary to defend against a client's accusation regarding the attorney's representation, even if that accusation is made apart from a disciplinary proceeding and made only for the purpose of

avoiding the payment of a fee. The point is that an accusation has been made and that accusation has been offered as a reason for not honoring my payment request.

Second, the mental health of Mrs. Wiese was a material issue in the Greb litigation. Mrs. Wiese might also suffer from a mental illness which is characterized by an unhealthy need to exact revenge of all of those who offend her. Further, because Mr. Wiese followed Mrs. Wieses' advice, her illness may have improperly influenced the course of the representation.

In particular, I advised Mr. and Mrs. Wiese to non-suit in early March in an effort to preserve their financial resources. One of their stated goals had been to force the Grebs to move away and the Grebs had done so. The Wiese family responded to my advice by stating that they would continue the litigation until they were able to successfully exact revenge against the Grebs.

In other words, I advised them well but they refused to heed my advice. Therefore, the revenge issue is not only central to my defense against the Wiese family's allegations of incompetence but also central to my assertion that the Wiese's breach of contract cannot be justified.

The revenge issue has also controlled my efforts to obtain payment by means of this mediation. In other words, you keenly observed that the Wiese's had provided no reason for deciding not to proceed with the $5,000.00 settlement proposal but that you "suspected" that Mrs. Wiese was behind it.

At that moment, it became clear to me that these negotiations have been controlled by the Wiese's need to exact revenge against me rather than by reason. How else can you explain somebody refusing an opportunity to cheat somebody else so perfectly just because the other party asked for a certified check? The Wiese family knew that my sons, who are in college, would be harmed if the Wiese family retracted the settlement offer that day yet decided to allow my children to be harmed for no reason.

In addition, it is reasonable for me to conclude that using the Bar mediation/arbitration system would be just as unsuccessful as the efforts to mediate we have undertaken over the past several weeks because the Wieses seem to be trying to exact revenge against me. Further, because of Mrs. Wiese's illness, anything I say or do to try to move these negotiations toward settlement may well be interpreted by the Wiese family as a personal attack which will, in turn, precipitate new efforts to seek revenge against me.

You have advanced a position which asserts that my only choices are to: 1) settle a $35,000 bill for $5,000.00; or 2) sue for breach of contract without disclosing the Wiese's revenge motive in the Greb litigation, even though the Wiese family will defend on a theory of incompetence and even though the Wiese family rejected my express advice that they set aside their desire to exact revenge against the Grebs. Neither option is just. Neither option is acceptable. Therefore, please inform the Wiese family that I understand their desire to avoid disclosure of the revenge information and that I am willing to work with them but that they must assume responsibility for their own choices.

If I do not receive a $5,000.00 partial payment by noon on September 8, 2009, it is likely that I will be forced to move out of my home. Because I did not make the car payment I promised to make last Friday, I may also lose my automobile. My sons' college education has already been

negatively impacted. Therefore, please make certain that the Wiese family makes an informed decision about their liability, which has already attached.

To summarize my position, I function as a single parent and, accordingly, will suffer a degree of harm that is unlike the harm others might suffer if I do not receive a partial payment by noon on September 8, 2009. Nevertheless, I must insist on a just resolution of this dispute.

Further, I have a contractual right to damages arising from the Wiese family's breach of contract. If I had withdrawn from the case as I offered to do, an award for direct or compensatory damages might not have been warranted. However, since the Wiese's legal counsel advised them to have me do the work involved in non-suiting the cause of action, I have completed my performance under the terms of the contract in full. Further, it seems that the fault for any negative result as to the non-suit should be assigned to you, Mr. Purnell, since you have stated that you were hired expressly to non-suit the case. If you had reason to believe that I was incompetent, was it not incumbent upon you to take the non-suit out of my hands and compete it competently?

Neither would any evidence about negative results be admissible in this breach of contract action since the contract expressly states that I make no guarantees about results. Further, I will also present a second letter which proves that I told Mr. Wiese in March 27, 2009 that I would not agree to guarantee results in this case because he had informed me at the outset that his opponent enjoyed the benefit of a "blue wall". As such, no reasonable basis exists for relating the Wiese's duty to perform to results obtained. Therefore, I should be granted summary judgment as to the breach of contract.

Finally, I have a letter from Mr. Wiese acknowledging indebtedness as to $15,000.00 (the "discounted" amount). Accordingly, it seems reasonable for the Wiese family to agree to pay this amount voluntarily so that I am able to avoid further harm to my family. I could then file a complaint seeking the remainder to the outstanding balance and damages. Or, we could work out things privately if the Wiese family is willing to do so.

In closing, I sincerely hope that the Wiese family will tender the $5,000.00 you offered in final settlement as a partial payment toward the outstanding fee today. That way, I can avoid exposing my family to additional harm. If no payment is forthcoming, my family will suffer serious financial damages for which the Wiese family will be fully liable.

Until now, our negotiations have been based entirely on the financial vulnerability of one party rather than reason or principle. It is possible for us to now resolve the matter in a fair and reasonable manner? If so, please respond immediately by entitling the Subject Line of your email: "The Wiese Family Agrees to tender $5,000 Payment". Otherwise, I've now exhausted every hope that this matter can be resolved without litigation.

Sincerely,

Cynthia G. Smith, Esquire

cc: Steven Horvath

EXHIBIT

## I. RE: WEISE MATTER

Tuesday, August 18, 2009 1:48 PM

From:

"Timothy M. Purnell" <tpurnell@manassaslawyers.com>

Add sender to Contacts

To:

"Cynthia G. Smith" <cynthia.smith@sound-counsel.com>

Cc:

"vze1pnio" <robert.wiese@verizon.net>

Cynthia,

I realized this moring that I had not yet forwarded your response to me to my client, so I forwarded it to him this moming and hope to chat with him later today or tomorrow and will have a response. One thing I can say from my own experience is that I am very surprised by your continual refusal to enter into alternative disupte resolution. It seems you have made a full judgment already and thus refuse to mediate. I ask you for one moment to reflect on this case from the Wiese's viewpoint. They brought a very real problem to you and sought your professional assistance and then lost at virtually every hearing they attended, rather than having an injunction issued against the Grebs, they were ordered to turn off the very equipment that proved the actions, they determined to nonsuit and rather than being granted that absolute right, got hit for $2000 in sanctions before being allowed to dismiss without prejudice.

You keep saying it was premeditated and that they never intended to pay you—I think some balance must

LETTER OF SEPTEMBER 7, 2009

Cynthia G. Smith
10646 Ashby Place
Fairfax Virginia 22030
(703)400-4412

October 8, 2009

Trong Nguyen:

Mr. Nguyen:

I regret that I have to inform you that I do not have the rent for October at this time. Nor am I certain when I will have the rent. Further, my oldest daughter, Joy is moving out to live near a new job, while a second daughter, D'esprit, has moved in but has not yet finalized her employment after graduating from UVA in June.

This summer I suffered a major setback when a client failed to pay a $30,000 bill. I had collected half of the fee then unwisely allowed him to defer the other half of the fee until June. I did this, in part, to be kind, and in part, to keep the income stream moving. Just when the other half of the fee was due, my client's adversary filed a new law suit against him. In turn, the client decided to finance this new law suit by not paying me. The result was devastating for me. At this time, I do have several settlements pending in other cases. Unfortunately, they have not been finalized.

On the bright side, I am in the process of launching an evangelistic (public access) cable television program which will be sponsored by my law office. I will complete the required training this week and will begin to produce the program next week. Though the thrust of the program will be inspirational, the public exposure is likely to bring in an influx of new clients.

I have no right to ask for an extension. However, if you are able to do so, would you consider using the security deposit for the rent this month? That would give me time to recover from this loss and provide the rent due, as well as next month's rent and a new security deposit. My plan would be to contract for a new lease by the end of this month, if you will allow me to do so. While I understand that the circumstances are not desirable in and of themselves, it is very possible that I will actually be able to pay you several months in advance in the near future.

I will await your reply.

Sincerely,

Cynthia G. Smith

22

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (hereinafter, "Agreement") is made effective on the 1st day of September 2009, although signed and ratified by each party hereto on the date reflected on the signature page by and between ROBERT H. WIESE, MARTHA V. WIESE, and KELLY WIESE (hereinafter, "WIESE PARTIES"), and CYNTHIA G. SMITH, Esquire (hereinafter, "SMITH"). Each person herein may be referred to as a "Party" and collectively herein as "Parties."

## W I T N E S S E T H:

WHEREAS, The WIESE PARTIES hired SMITH, who is a Virginia licensed attorney to file a lawsuit against DAVID J. GREB and MARY E. GREB (hereinafter the "Litigation"); and

WHEREAS, the Litigation filed by SMITH proceeded to a point where SMITH filed a non-suit; and

WHEREAS, the WIESE PARTIES were and are not pleased with the services of SMITH in the Litigation and believe her efforts were unsuccessful as a result of her inexperience or inability to present the case properly to the Judges of Fairfax County, and

WHEREAS, SMITH alleges that the WIESE PARTIES owe her $34,068.00; and

~~WHEREAS, SMITH has threatened to sue the WIESE PARTIES for her attorney's fees, to sue them for fraud, and to file criminal charges against all or some of the WIESE PARTIES for issues arising from her representation and the Litigation and her belief that they never intended to pay for her services; and~~

WHEREAS, The GREBS have now filed an action against the WIESE PARTIES; and

WHEREAS, all Parties desire to fully and finally resolve and settle any and all claims, disputes and/or issues which exist or may exist in any way related to or arising from the Litigation, SMITH's representation and any action taken by the Parties during the course of SMITH's representation;

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the parties hereby agree as follows:

1.    The Recitals set forth above are expressly incorporated in this Agreement, and are made a binding part of the Agreement.

2.    Settlement and Mutual Releases. In exchange for WIESE PARTIES' lump sum payment of Five Thousand Dollars ($5,000.00) to SMITH ("the Settlement Amount"), receipt of which is hereby acknowledged the WIESE PARTIES, and SMITH agree to release each other, their past, present and future agents, attorney's, representatives, employees and assigns, from any and all legal, equitable or other claims, counterclaims, demands, rights of contribution, setoffs, defenses, contracts, accounts, suits, debts, agreements, actions, causes of actions, torts, charges, sums of money, reckonings, bonds, bills, specialties, covenants, promises, variances, trespasses, damages, extents, executions, judgments, findings controversies and disputes, and any past, present or future duties, responsibilities, obligations or liabilities, whether or not now known and of any kind whatsoever, with respect to the claims raised in the Litigation and dealings among the parties during the course of SMITH's representation. Notwithstanding the foregoing, this release does not apply to any of the Parties' obligations, claims, or rights arising out of this Agreement.

3.    Compromise. This Agreement and the mutual general release contained herein do and are intended to affect the compromise and settlement of the conflicts between the Parties as a result of the Litigation, and SMITH's representation and all other claims, liabilities and responsibilities between the Parties, and nothing contained herein shall be construed as an admission by any Party of any liability of any kind to any of the other Parties.

4.    Benefit and Burden. This Agreement shall be binding upon, and inure to the benefit of the Parties and their respective heirs, executors, administrators, representatives, successors and assigns.

5.    Entire Agreement. All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter hereof are contained herein. No other agreements, covenants, representations or warranties, expressed or implied, oral or written, have been made by any Party to any other Party concerning the subject matter hereof. All prior and contemporaneous conversations, negotiations, possible and alleged agreements, representations, covenants and warranties concerning the subject matter hereof are merged herein. The Parties agree that this Agreement can only be amended by a writing signed by all Parties.

6.    Voluntary Agreement. The Parties represent and declare that they have carefully read this Agreement, have had the benefit of legal counsel, and know and understand the contents hereof, and that they sign the same freely and voluntarily.

7.    Severability. If any provisions of this Agreement or any part of any provision of this Agreement is determined to be unenforceable or invalid for any reason whatsoever, it shall be severable from the rest of this Agreement and shall not invalidate or affect the other portions or parts of the Agreement, which shall remain in full force and effect and be enforceable according to their own terms.

8.     Waiver.  No failure to exercise and no delay in exercising any right, remedy, or power under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, or power under this Agreement preclude any other or further exercise thereof, or the exercise of any other right, remedy, or power provided herein or by law or in equity.

9.     Confidentiality, Non-Disparagement and Non-Disclosure.  The Parties agree that the terms of this Agreement, the Litigation or any client confidences provided to SMITH during her representation and all matters or circumstances relating thereto, shall be kept confidential and shall not be disclosed to any third party at any time unless required by process of law.  Such confidentiality agreement shall not include discussions with the Parties' attorneys, financial advisors, tax consultants and accountants.  Further, this Agreement and its terms shall not be used or disclosed in any court, arbitration, or other legal proceeding except to enforce the provisions of this Agreement, or under order of the Court.  Upon such necessity as is referenced above, the Parties covenant to provide advance notice in writing to the other party prior to such dissemination.  Further the parties each agree not to disparage or in any way seek to damage the reputation of the other.

10.    Attorneys' Fees and Costs.  Each Party shall bear its own attorneys' fees, costs, and expenses incurred by them in connection with the disputes settled by this Agreement.  In the event of litigation, Arbitration or other Alternative Dispute resolution forums arising over this Agreement, the substantially prevailing party shall be entitled to its reasonable attorneys' fees and costs.

11.    Virginia Law.  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia.  Any disputes concerning this Agreement will be resolved in the courts of the Commonwealth of Virginia, and venue shall be had in Prince William County.  The Parties agree that such courts provide a proper and convenient venue, and hereby waive their right to proceed in any other forum.

12.    Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, and all counterparts so executed shall constitute one agreement binding on all of the Parties, notwithstanding that not all of the Parties are signatory to the same counterpart.

13.    Enforceable Copies.  A copy, facsimile or a scanned copy of the original of this agreement shall be equally enforceable as the original.

14.    Signatures.  The Parties hereby signify their agreement to the above terms by their signatures below.


**REMAINDER OF THIS PAGE INTENTIONALLY BLANK**

## SIGNATURES ON THE FOLLOWING PAGE

IN WITNESS WHEREOF, the Parties have executed this Agreement, on the date noted beside each signature.

_____
ROBERT H. WIESE.

_____
DATE   9/1/09

_____
MARTHA V. WIESE

_____
DATE   Sept. 1, 2009

_____
KELLY WIESE

_____
DATE   Sept. 1, 2009

_____
CYNTHIA G. SMITH, ESQUIRE

_____
DATE   Sept 9, 2008

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (hereinafter, "Agreement") is made effective on the 1st day of September 2009, although signed and ratified by each party hereto on the date reflected on the signature page by and between ROBERT H. WIESE, MARTHA V. WIESE, and KELLY WIESE (hereinafter, "WIESE PARTIES"), and CYNTHIA G. SMITH, Esquire (hereinafter, "SMITH"). Each person herein may be referred to as a "Party" and collectively herein as "Parties."

## W I T N E S S E T H :

WHEREAS, The WIESE PARTIES hired SMITH, who is a Virginia licensed attorney to file a lawsuit against DAVID J. GREB and MARY E. GREB (hereinafter the "Litigation"); and

WHEREAS, the Litigation filed by SMITH proceeded to a point where SMITH filed a non-suit; and

WHEREAS, the WIESE PARTIES were and are not pleased with the services of SMITH in the Litigation and believe her efforts were unsuccessful as a result of her inexperience or inability to present the case properly to the Judges of Fairfax County, and.

WHEREAS, SMITH alleges that the WIESE PARTIES owe her $34,068.00; and

~~WHEREAS, SMITH has threatened to sue the WIESE PARTIES for her attorney's fees, to sue them for fraud, and to file criminal charges against all or some of the WIESE PARTIES for issues arising from her representation and the Litigation and her belief that they never intended to pay for her services; and~~

WHEREAS, The GREBS have now filed an action against the WIESE PARTIES; and

WHEREAS, all Parties desire to fully and finally resolve and settle any and all claims, disputes and/or issues which exist or may exist in any way related to or arising from the Litigation, SMITH's representation and any action taken by the Parties during the course of SMITH's representation;

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the parties hereby agree as follows:

1.      The Recitals set forth above are expressly incorporated in this Agreement, and are made a binding part of the Agreement.

2.  <u>Settlement and Mutual Releases</u>.  In exchange for WIESE PARTIES'
lump sum payment of Five Thousand Dollars ($5,000.00) to SMITH ("the Settlement
Amount"), receipt of which is hereby acknowledged the WIESE PARTIES, and SMITH
agree to release each other, their past, present and future agents, attorney's,
representatives, employees and assigns, from any and all legal, equitable or other claims,
counterclaims, demands, rights of contribution, setoffs, defenses, contracts, accounts,
suits, debts, agreements, actions, causes of actions, torts, charges, sums of money,
reckonings, bonds, bills, specialties, covenants, promises, variances, trespasses, damages,
extents, executions, judgments, findings controversies and disputes, and any past, present
or future duties, responsibilities, obligations or liabilities, whether or not now known and
of any kind whatsoever, with respect to the claims raised in the Litigation and dealings
among the parties during the course of SMITH's representation.  Notwithstanding the
foregoing, this release does not apply to any of the Parties' obligations, claims, or rights
arising out of this Agreement.

3.  <u>Compromise</u>.  This Agreement and the mutual general release contained
herein do and are intended to affect the compromise and settlement of the conflicts
between the Parties as a result of the Litigation, and SMITH's representation and all other
claims, liabilities and responsibilities between the Parties, and nothing contained herein
shall be construed as an admission by any Party of any liability of any kind to any of the
other Parties.

4.  <u>Benefit and Burden</u>.  This Agreement shall be binding upon, and inure to
the benefit of the Parties and their respective heirs, executors, administrators,
representatives, successors and assigns.

5.  <u>Entire Agreement</u>.  All agreements, covenants, representations and
warranties, express or implied, oral or written, of the Parties concerning the subject
matter hereof are contained herein. No other agreements, covenants, representations or
warranties, expressed or implied, oral or written, have been made by any Party to any
other Party concerning the subject matter hereof. All prior and contemporaneous
conversations, negotiations, possible and alleged agreements, representations, covenants
and warranties concerning the subject matter hereof are merged herein. The Parties agree
that this Agreement can only be amended by a writing signed by all Parties.

6.  <u>Voluntary Agreement</u>.  The Parties represent and declare that they have
carefully read this Agreement, have had the benefit of legal counsel, and know and
understand the contents hereof, and that they sign the same freely and voluntarily.

7.  <u>Severability</u>.  If any provisions of this Agreement or any part of any
provision of this Agreement is determined to be unenforceable or invalid for any reason
whatsoever, it shall be severable from the rest of this Agreement and shall not invalidate
or affect the other portions or parts of the Agreement, which shall remain in full force and
effect and be enforceable according to their own terms.

8.     Waiver.  No failure to exercise and no delay in exercising any right, remedy, or power under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, or power under this Agreement preclude any other or further exercise thereof, or the exercise of any other right, remedy, or power provided herein or by law or in equity.

9.     Confidentiality, Non-Disparagement and Non-Disclosure.  The Parties agree that the terms of this Agreement, the Litigation or any client confidences provided to SMITH during her representation and all matters or circumstances relating thereto, shall be kept confidential and shall not be disclosed to any third party at any time unless required by process of law.  Such confidentiality agreement shall not include discussions with the Parties' attorneys, financial advisors, tax consultants and accountants.  Further, this Agreement and its terms shall not be used or disclosed in any court, arbitration, or other legal proceeding except to enforce the provisions of this Agreement, or under order of the Court.  Upon such necessity as is referenced above, the Parties covenant to provide advance notice in writing to the other party prior to such dissemination.  Further the parties each agree not to disparage or in any way seek to damage the reputation of the other.

10.     Attorneys' Fees and Costs.  Each Party shall bear its own attorneys' fees, costs, and expenses incurred by them in connection with the disputes settled by this Agreement.  In the event of litigation, Arbitration or other Alternative Dispute resolution forums arising over this Agreement, the substantially prevailing party shall be entitled to its reasonable attorneys' fees and costs.

11.     Virginia Law.  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia.  Any disputes concerning this Agreement will be resolved in the courts of the Commonwealth of Virginia, and venue shall be had in Prince William County.  The Parties agree that such courts provide a proper and convenient venue, and hereby waive their right to proceed in any other forum.

12.     Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, and all counterparts so executed shall constitute one agreement binding on all of the Parties, notwithstanding that not all of the Parties are signatory to the same counterpart.

13.     Enforceable Copies.  A copy, facsimile or a scanned copy of the original of this agreement shall be equally enforceable as the original.

14.     Signatures.  The Parties hereby signify their agreement to the above terms by their signatures below.


**REMAINDER OF THIS PAGE INTENTIONALLY BLANK**

**SETTLEMENT AND RELEASE              PAGE - 3**

SIGNATURES ON THE FOLLOWING PAGE

IN WITNESS WHEREOF, the Parties have executed this Agreement, on the date noted beside each signature.

_____
ROBERT H. WIESE.

_____ 9/1/09
DATE

_____
MARTHA V. WIESE

Sept. 1, 2009
DATE

_____
KELLY WIESE

Sept. 1, 2009
DATE

_____
CYNTHIA G. SMITH, ESQUIRE

Sept 9, 2008
DATE

SETTLEMENT AND RELEASE         PAGE - 4