IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

CYNTHIA G. SMITH, ESQUIRE,     )
                               )
    Plaintiff,                 )
                               )
        v.                     )     1:11cv922 (JCC/IDD)
                               )
TIMOTHY PURNELL, ESQUIRE,      )
                               )
    Defendant.                 )

### M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendant Timothy
Purnell's Motion to Dismiss and Plaintiff's Motion for Leave to
Amend, Motion to Deny Defendant's Motion to Dismiss as Moot, and
Motion for Administrative Relief.  For the following reasons,
the Court will grant Defendant's motion and deny Plaintiff's
motions.

### I. Background

#### A.   Factual Background

Plaintiff Cynthia G. Smith is a member of the Virginia
Bar and brings a *pro se* Complaint against another lawyer,
Defendant Timothy Purnell, for actions that arise out of their
independent representation of members of the Wiese family.[1]

---

[1] Although Plaintiff is proceeding *pro se*, she is a licensed attorney.
Therefore, Plaintiff "is not automatically subject to the very liberal
standards afforded to a non-attorney pro se plaintiff because an attorney is
presumed to have a knowledge of the legal system and need less protections
from the court." *Rossman v. Chase Home Fin., LLC*, 772 F. Supp. 2d 169, 170
n.1 (D.D.C. 2011) (internal quotation marks omitted).

1

Plaintiff alleges that Defendant interfered with her contract with members of the Wiese family and that Defendant entered into a conspiracy with members of the Wiese family to avoid paying Plaintiff $25,000 in fees for completed work.  (Compl. [Dkt. 1] ¶¶ 59, 86, 92).  Asserting diversity jurisdiction, the Complaint contains three counts: tortious interference with contract and/or reasonable business expectancy, violation of the Virginia Business Conspiracy Statute, Va. Code. Ann. §§ 18.2-499, 500, and common law civil conspiracy.  [Dkt. 1.]  Plaintiff seeks three million dollars in "direct and compensatory" or "direct and consequential" damages, over $1,050,000 in punitive damages, and treble damages.  [Dkt. 1.]

Plaintiff was retained by members of the Wiese family on August 25, 2008, to "obtain relief for the maltreatment [they] have suffered from [their] neighbors."  (Fee Agreement [Dkt. 1.] at 21).[2]  Although only Martha and Robert Wiese signed the Fee Agreement, Plaintiff submits that she also represented Kelly Wiese (together the Wiese family).  (Compl. ¶ 1.) Plaintiff states that she "agreed to allow Clients to . . . pay the entire amount due at the end of the litigation."  (Compl. ¶ 8.)  Plaintiff submits that she represented the Wiese family in a criminal and civil matter related to their dispute with their neighbors.  (Compl. ¶ 1.)  In the civil matter, Plaintiff came

---

[2] Exhibits were included with the Complaint, but were not labeled as such.  As a result, they are referenced by their name and the page number of the Complaint.

2

to believe that the court's rulings were the result of "case fixing," that is to say that Plaintiff believed that "the opponent's attorneys had unlawfully exchanged valuable consideration within the court system in order to achieve a favorable result for their clients." (Compl. ¶¶ 10, 54.) As a result, she urged the Wiese family to nonsuit their civil case in March 2009. (Compl. ¶¶ 11-12.)

The Wiese family was dissatisfied with Plaintiff's representation. (Compl. ¶ 14.) Plaintiff alleges that Mr. Robert Wiese told Plaintiff that she was "too honest to be an attorney" and that Mr. Wiese wanted to "hire the dirtiest, filthiest, most low-down attorneys that we can find." (Compl. ¶ 14.) Defendant concurs that the Wiese family was dissatisfied with Plaintiff's representation and submits that they hired him to help get the civil case dismissed. (Compl. ¶ 17.) After the Wiese family retained Defendant, on or about June 6, 2009, Plaintiff requested payment in full from Robert Wiese in the amount of $30,000. (Compl. ¶ 18; D. Mem. at 3.) Mr. Wiese objected to this request (Compl. ¶ 19) and Defendant, as counsel to the Wiese family, wrote to Plaintiff to request that the matter be submitted to the Virginia bar's fee dispute resolution program. (Compl. ¶¶ 17, 19.) Plaintiff refused to participate in the program and instead threatened to sue the Wiese family

3

for fraud and file criminal charges.  (September 7, 2009 Letter [Dkt. 1] at 23; August 18, 2009 Email [Dkt. 10-1] at 2.)

During that time, Plaintiff alleges that Defendant, on behalf of the Wiese family, requested that Plaintiff complete the tasks necessary to enter the non-suit.  (Compl. ¶ 29.) Plaintiff states that Defendant allegedly told Plaintiff that he had "advised the Wiese family not to pay" Plaintiff's bill, but that he nevertheless believed that it was wrong for the Wieses not to pay her and that he would get her "paid in full." (Compl. ¶¶ 30-31, 37.)  Plaintiff alleges that Defendant's statement was made in order to induce her to "complete the tasks needed to obtain [the] non-suit."  (Compl. ¶ 32.)

Plaintiff ultimately assisted the Wiese family in taking a voluntary nonsuit of their civil case.  (Compl. ¶¶ 52, 54-55.)  After obtaining the dismissal, Plaintiff emailed Defendant "repeatedly" stating that she "would incur severe financial damages if the Wiese family further postponed payment in full."  (Compl. ¶ 53.)  On or about September 1, 2009, Defendant informed the Plaintiff that the Wiese family was willing to settle the dispute for $5,000 and had prepared a release to that effect.  (Compl. ¶ 57; Settlement Agreement and Release [Dkt. 1] at 28.)  On September 7, 2009, Plaintiff responded in a letter stating that she would not enter into a settlement for $5,000, believing that the offer "resembles a

4

type of extortion." (September 7, 2009 Letter at 23.)
Plaintiff again threatened litigation, this time stating that
her only other option was to "sue for breach of contract."
(September 7, 2009 Letter at 24-25.) Plaintiff requested a
partial payment so she could then "file a complaint seeking the
remainder to the outstanding balance and damages." *Id.*
Plaintiff noted "[i]f I do not receive a $5,000 partial payment
by noon on September 8, 2009, it is likely that I will be forced
to move out of my home" and "[b]ecause I did not make the car
payment I promised to make last Friday, I may also lose my
automobile," and finally that "[her] sons' college education has
already been negatively impacted." *Id.*

Despite Plaintiff's initial refusal to enter into a
settlement agreement, on September 9, 2009, Plaintiff signed the
Settlement Agreement and Release (the Settlement Agreement).
(Settlement Agreement [Dkt. 1] at 31.) The Settlement Agreement
states that the Wiese parties were "not pleased with the
services of [Plaintiff] in the Litigation and believe her
efforts were unsuccessful as a result of her inexperience or
inability to present the case properly . . . ." (Settlement
Agreement at 28.) The agreement also contains a "Settlement and
Mutual Releases" clause. The clause states that in exchange for
the Wieses' lump sum payment of $5,000 to Plaintiff, the Wiese
parties and Plaintiff agree to release each other, and "their

5

past, present, and future agents and attorney's (sic)," from all claims related to "the claims raised in the Litigation and dealings among the parties during the course of [Plaintiff's] representation." (Settlement Agreement at 29.)

Over two years later, on August 31, 2011, Plaintiff brought suit against Defendant for his role in representing the Wiese family. [Dkt. 1.] Plaintiff alleges that Defendant interfered with her Fee Agreement contract with the Wieses and with her "expectancy [of] full payment under the contract." (Compl. ¶ 59.) Plaintiff argues that Defendant conspired with the Wiese family to avoid paying her, and to get her to file a motion for nonsuit by "deceiving [her] into thinking she would be paid in full."[3] (Compl. ¶¶ 86, 92.) Plaintiff claims that she signed the Settlement Agreement "under duress" because of her "distressed financial state." (Compl. ¶¶ 64-65.) Plaintiff asserts that, as a result, Defendant is liable for financial reversals that she alleges flowed from not receiving a payment

---

[3]Plaintiff's theory of how Defendant interfered with the Fee Agreement contract is as follows: "By inducing Plaintiff to perform tasks under the contract in exchange for full payment under the contract notwithstanding his then present knowledge that it was the Wiese's goal to avoid paying Plaintiff the full amount owed; by receiving payment from the Wiese family for the completion of tasks pertaining to obtaining a non-suit that Plaintiff performed; by helping the Wiese family to achieve their goal not to pay Plaintiff the amount due under the contract by promising that the Wiese family would pay even though he knew that they did not want to pay; by persuading Plaintiff to delay her demand for payment so as to create a financial emergency; helping the Wiese family to achieve a breach of contract, by drafting the release and by managing the termination of the contract, Defendant induced the breach as well as the termination of Plaintiffs (sic) expectancy to receive full payment under the contract." (Compl. ¶ 59; Am. Compl. ¶ 122.)

of $30,000.[4]  Plaintiff seeks over four million dollars in damages.  [Dkt. 1.]

>   B.   Procedural Background

Plaintiff filed a Complaint against Defendant Timothy Purnell on August 31, 2011.  [Dkt. 1.]  On October 19, 2011, Defendant filed a Motion to Dismiss for failure to state a claim upon which relief can be granted.  [Dkt. 9.]  On November 3, 2011, Plaintiff filed a Motion for Extension of Time to File a Response [Dkt. 11], which was granted on November 4, 2011 [Dkt. 12].  Plaintiff's deadline to respond to the Motion to Dismiss was extended to November 17, 2011.  [Dkt. 12.]

On November 17, 2011, Plaintiff filed a Motion for Leave to Amend the Complaint [Dkt. 14] and a Motion to Deny Defendant's Motion to Dismiss as Moot [Dkt. 15].  On November 21, 2011, Defendant submitted a Reply in support of the Motion to Dismiss.  [Dkt. 17.]  And on November 28, 2011, Defendant submitted opposition to Plaintiff's Motion for Leave to Amend the Complaint and Motion to Deny Defendant's Motion to Dismiss as Moot.  [Dkt. 18.]

---

[4] Plaintiff submits that "[a]s a direct and proximate result of the breach, Plaintiff was forced to close her virtual office in Fairfax City; Plaintiff was forced to close her legal practice; Plaintiff was forced to move out of her rental home; Plaintiff was forced to sell her automobile; Plaintiff suffered irreparable harm to her credit standing; Plaintiffs (sic) email records, including some of the records she had created in order to prove Defendant's knowledge of her circumstances, were lost when Plaintiff was unable to pay the amount due on that account; Plaintiff defaulted on a consumer loan; Plaintiff has suffered harm to her reputation; Plaintiff has been unable to earn income from other sources; Plaintiffs (sic) underage children suffered harm to their educational pursuits; Plaintiffs (sic) adult children have been forced to house, feed, and other wise provide for Plaintiff. Plaintiff has suffered emotional suffering." (Compl. ¶ 68.)

On December 1, 2011, Plaintiff filed an Opposition to the Motion to Dismiss [Dkt. 19] and a Supplement to the Opposition [Dkt. 20].   Also on December 1, 2011, Plaintiff filed a Motion for Administrative Relief, in which she requested that she be excused from attending a hearing on December 2, 2011.  [Dkt. 21.]  In support of the Motion for Administrative Relief, Plaintiff filed the "Declaration of Cynthia G. Smith in Support of Plaintiff's Motion for Administrative Relief."  [Dkt. 22.]

Defendant's motion and Plaintiff's motions are now before this Court.

## II. Standard of Review

### A. Motion for Leave to Amend

A party may amend a pleading once as a matter of course if the party does so either (i) within 21 days after serving the pleading to be amended or (ii) within 21 days after service of a responsive pleading or after the service of a motion under Rule 12(b), whichever is earlier.  Fed. R. Civ. P. 15(a)(1).  When the Rule 15(a)(1) time period expires, the proposed amendment falls under Rule 15(a)(2), which requires either leave of court or written consent of the opposing party to amend a pleading.  Fed. R. Civ. P. 15(a)(2).  Rule 15(a)(2) of the Federal Rules of Civil Procedure directs that a court "should freely give leave when justice so requires." *Id.*

In the Fourth Circuit, a motion for leave to amend pursuant to Rule 15(a)(2) can be denied only where "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Steinberg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008) (quoting *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)).   In determining whether a proposed amendment is futile, a court may consider whether the proposed amendments could withstand a motion to dismiss.   *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (affirming denial of plaintiff's motion for leave to amend her complaint as futile because "the proposed amendments could not withstand a motion to dismiss."); 6 Charles Alan Wright, et al., Federal Practice and Procedure § 1487, at 743 n.28 (2010).   Thus, a court may test the sufficiency of the proposed amendments by applying the standard of review applicable in a Rule 12(b)(6) motion to dismiss.

### B. Failure to State a Claim

Rule 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).   In deciding a 12(b)(6) motion, a court must first be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8.  While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)(citation omitted).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, *id.*, and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.  Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1949-50.  Courts may also consider exhibits attached to the complaint. *See United States ex rel. Constructors, Inc. v. Gulf Ins. Co.*, 313 F. Supp. 2d 593, 596 (E.D. Va. 2004).  Where a conflict exists between "the

10

bare allegations of the complaint and any attached exhibit, the exhibit prevails." *Gulf Ins. Co.*, 313 F. Supp. 2d. at 596 (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).

### I. Analysis

The Court will first turn to Plaintiff's Motion for Administrative Relief.  It will then consider Plaintiff's Motion for Leave to Amend and Motion to Deny as Moot.  The Court will consider Defendant's Motion to Dismiss last.

### A.   Motion for Administrative Relief

Plaintiff's Motion for Administrative Relief, which was filed on December 1, 2011, requests that she be excused from attending a hearing that was scheduled before this Court on December 2, 2011.  [Dkt. 21.]  Prior to Plaintiff's filing of this motion, on November 29, 2011, the Court terminated that hearing.  As a result, Plaintiff's Motion for Administrative Relief is denied as moot.

### B.   Motion for Leave to Amend

Plaintiff's Motion for Leave to Amend the Complaint can be denied only if Plaintiff acted in bad faith, the amendment would prejudice Defendant, or the amendment would be futile.  *Laber*, 438 F.3d at 426.  Plaintiff did not act in bad faith in filing her Motion for Leave to Amend or in failing to include the amended allegations in the Amended Complaint.

Because the trial date is not yet set and no discovery has been taken, the Court finds that allowing leave to amend the Complaint would not be unduly prejudicial to Defendant. Therefore, the only remaining question in this matter is whether allowing the amendment would be futile.  If the proposed amendment is futile, the Court must deny Plaintiff's Motion for Leave to Amend.  *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962); *Johnson*, 785 F.2d at 509.

Plaintiff submits that she seeks to amend the Complaint to "address several deficiencies identified in Defendant's Motion to Dismiss and to add a new party."  (Mot. Leave to Amend [Dkt. 15] ¶ 10.)  The new party is Coon and Purnell, P.C., which is the law firm where Defendant is a Principal and Managing Partner.  (Am. Compl. [Dkt. 14-1] ¶¶ 3-4.)  Plaintiff argues that since Defendant is a joint owner or partner of Coon and Purnell, P.C., the firm is jointly and severally liable for Defendant's conduct.  (Am. Compl. ¶¶ 182-88.)

The Amended Complaint includes over 90 additional paragraphs that provide a variety of information, explanation, and argumentation about topics that were raised in the Complaint.  Despite the volume of verbiage, the Amended Complaint fails to allege new facts that are salient to Plaintiff's claims.  The Amended Complaint does, however, allege

12

a new theory, which is that the Wiese family breached the Fee
Agreement contract before Defendant was retained to help resolve
the dispute.

Plaintiff argues that Mr. Robert Wiese's alleged
statement that he wanted to "hire the dirtiest, filthiest, most
low-down attorneys," "implied that Plaintiff was expected to use
unlawful and/or unethical strategies in order to maintain him as
a client and constituted a breach of Plaintiff's agreement with
the Wiese family." (Am. Compl. ¶¶ 23, 26.) Plaintiff claims
that, as a result, she had "the right to withdraw immediately
from the representation." (P. Mem. in Supp. [Dkt. 16] at 5.)
In support, Plaintiff points to a provision in the Fee Agreement
that permitted Plaintiff to withdraw from representation in
certain situations. (Am. Compl. ¶ 8.)

The alleged statement by Mr. Robert Wiese and the Fee
Agreement are not, however, new facts. They were present in the
Complaint. All Plaintiff has done is introduce a new theory
that the Fee Agreement was breached prior to Defendant's alleged
statement that he would get Plaintiff "paid in full." Plaintiff
appears to argue this new theory in the alternative, as she
continues to insist that Defendant "help[ed] the Wiese family
achieve a breach of contract by . . . managing the termination
of the contract." (Am. Compl. ¶ 19.)

Plaintiff also amended the Complaint to add additional color on Defendant's alleged statement that he would arrange for Plaintiff to get paid in full.  Plaintiff now claims that "Defendant stated that he was willing and able to promise that Mr. Wiese would pay the amount due in full if the Plaintiff would agree to: 1) complete the tasks needed to obtain a non-suit and 2) provide the Wiese family with a detailed invoice." (Am. Compl. ¶ 79.)  And, that "[t]he exact words used by Defendant were: 'I promise to get you paid in full.'"  (Am. Compl. ¶ 81.)  Plaintiff does not, however, allege any facts that explain how Defendant's alleged promise, "fraudulently induced Plaintiff to accept an unconscionable settlement."  (Am. Compl. ¶ 163.)

The Court finds that granting leave to amend would be futile for the following reasons.

> a. <u>Settlement Agreement</u>

First, Plaintiff's claims are barred by the "Settlement and Mutual Releases" clause of the Settlement Agreement she signed on September 9, 2009.  The Settlement Agreement explicitly released all claims Plaintiff had against the Wiese family's attorneys that were related to dealings among the parties during the course of Plaintiff's representation. Defendant was an attorney for the Wiese family at the end of 2009 and Plaintiff is disputing the dealings among the parties

14

during the course of her representation of the Wiese family at
that time.  She does not dispute the obligations, claims, or
rights arising out of the Settlement Agreement, rather she
disputes Defendant's conduct leading up to the Settlement
Agreement, arguing Defendant somehow interfered with her Fee
Agreement with the Wieses.  As a result, the release of
liability in the Settlement Agreement extends to Defendant and
bars this action.

Plaintiff's allegation that she signed the Settlement
Agreement under duress, as she was in a "distressed financial
state," does not invalidate the Settlement Agreement.  Under
Virginia law, "'[d]uress is not readily accepted as an excuse,'
and must be proven by clear and convincing evidence." *Pelfrey
v. Pelfrey*, 25 Va. App. 239, 246 (Va. Ct. App. 1997)(quoting
*Div. of Soc. Servs. v. Unknown Father*, 2 Va. App. 420, 435 (Va.
Ct. App. 1986)).  Duress exists "when a defendant commits a
wrongful act sufficient to prevent a plaintiff from exercising
his free will, thereby coercing the plaintiff's consent." *Goode
v. Burke Town Plaza, Inc.*, 246 Va. 407, 411, 436 S.E.2d 450, 452
(Va. 1993).  This defense has been extremely limited by Virginia
courts.  For example, the Supreme Court of Virginia has held
that "[a] contract reluctantly entered into by one badly in need
of money without force or intimidation and with full knowledge
of the facts is not a contract executed under duress." *Id.*

15

(citing *Seward v. Am. Hardware Co.*, 161 Va. 610, 639 171 S.E.

650, 662 (Va. 1933)); *see also Cary v. Harris*, 120 Va. 252, 258-

59, 91 S.E. 166 (Va. 1917) ("Equity will not set aside a

contract whose purpose is a settlement of disputes, simply

because one party to it was in want of money when he made it,

and because such want may have been an inducing cause for his

making it; the party having been an intelligent person, who

acted deliberately and with knowledge of what he was doing.").

There are no facts alleged indicating Defendant or the

Wiese family exerted force, intimidation, or threats related to

the offer to settle and, in fact, there is evidence that they

also offered to bring the dispute to mediation.  That Plaintiff

informed Defendant of her difficult financial position does not

convert the offers to mediate and settle into coercion.

Plaintiff acted deliberately and with complete knowledge of the

fact that she was accepting a sum less than what she claimed to

be due to her in full satisfaction.  Plaintiff is an attorney,

the Settlement Agreement states that the parties signed the

agreement "freely and voluntarily," and the agreement is

explicit as to the scope of its release.  Thus, the Court finds

that it bars the instant action.

### b. Failure to State a Claim for Relief

Even if the instant dispute is not covered by the

Settlement Agreement, Plaintiff has failed to state a claim upon

which relief can be granted.  Plaintiff sues Defendant for
actions taken as part of his representation of the Wiese family.
Despite being an attorney, Plaintiff has remarkably missed the
fact that the attorney-client relationship is one of agency.
*See Michigan Mut. Ins. Co. v. Smoot*, 128 F. Supp. 2d 917, 925
(E.D. Va. 2000).

As an agent, the attorney cannot be liable for
tortious interference with a contract of which his principal was
a party.  *Fox v. Deese*, 234 Va. 412, 427 (Va. 1987); *see also
Michigan Mut. Ins. Co.*, 128 F. Supp. 2d at 925 (holding that
"[b]ecause the Attorneys were in a principal-agent relationship
with the [defendant], a claim of tortious interference with
contract will not lie.").  In *Fox*, the Supreme Court of Virginia
explained that since the defendant was an agent of the City, the
City's contract was also the defendant's contract and "[a]
person cannot intentionally interfere with his own contract."
*Id.*  "*Fox* establishes a general principal-agent rule," *Michigan
Mut. Ins. Co.*, 128 F. Supp. 2d at 925, and this Court finds that
its rationale applies to tortious interference with business
expectancy.

Also, under Virginia law, agents cannot conspire with
their principals for the purposes of statutory or common law
conspiracy.  When "[d]efendants were acting as agents of the
same principal, within the scope of their agency relationship, a

17

conspiracy is legally impossible." *Phoenix Renovation Corp. v.
Rodriguez,* 461 F. Supp. 2d 411, 429 (E.D. Va. 2006).  And,
"Virginia has not recognized the so-called 'personal stake'
exception to this general rule when the conspiring agent has an
independent personal stake in achieving the conspiracy's illegal
objective."  *Id.* (referencing *Softwise, Inc. v. Rana Goodrich*,
63 Va. Cir. 576, 578 (Va. Cir. Ct. 2004)).  The rule that agents
cannot conspire with their principals has been applied to
allegations that an attorney conspired with his client, *see
Michigan Mut. Ins. Co.*, 128 F. Supp. 2d at 925, and it is
applicable here.

     Plaintiff argues that "[a]s to the portion of the
Wiese family's agreement with Mr. Purnell which required Mr.
Purnell to assist the Wieses in the commission of a fraudulent
act, the agreement was unlawful, illegal, and beyond the scope
of a lawful principal/agent relationship so as to void all
rights which accrue under a lawful principal/agent
relationship."  (Am. Compl. ¶ 56.)  Not only does this argument
miss the mark with respect to the tortious interference and
conspiracy claims, but the Court finds that Plaintiff has not
alleged facts to support a finding that Defendant's agreement to
represent the Wiese family was in any way unlawful, illegal, or
"beyond the scope of a lawful principal/agent relationship."
The only fact that Plaintiff submits bears on this inquiry is

18

that Mr. Robert Wiese allegedly stated that he wanted to "hire the dirtiest, filthiest, most low-down attorneys."  (Notably, the Amended Complaint does not submit any facts indicating that Mr. Wiese thought, or that Defendant was, such an attorney.) From that alleged statement, Plaintiff then conjures up a scenario in which she assumes Defendant was hired to engage in unethical and unlawful conduct.[5]  Plaintiff's allegations on this count are conclusory and they have no bearing on the fact that Defendant was retained by the Wiese family and was therefore acting as their agent when he contacted Plaintiff.[6]

* * *

For the reasons stated above, Plaintiff's proposed amendment to the Complaint would be subject to a motion to dismiss and is therefore futile.

C.   <u>Motion to Deny as Moot</u>

---

[5] Plaintiff argues that based on her experience representing the Wiese family, they must have concluded "that courts are places where litigants, attorneys and judges are expected to engage in dishonest conduct." (Am. Compl. ¶ 52.) Thus, Plaintiff submits, "[t]he mindset they adopted was that they would make certain that the next attorney they retained would be willing to engage in such conduct, because, in their view, this was the only way to assure victory." (Am. Compl. ¶ 53.)  Finally, Plaintiff concludes that "[w]ith this mindset in view, it is reasonable to assume that Defendant's willingness to engage in unethical and/or unlawful conduct in order to achieve the Wiese family's goals was a condition of the agreement entered into between Defendant and the Wiese family. (Am. Compl. ¶ 54.)

[6] Defendant claims that Defendant's statements are protected by absolute privilege, but "[t]he Virginia Supreme Court has not yet extended the absolute privilege to 'mere potential litigation.'"  *Mansfield v. Bernabei*, 2011 Va. Cir. LEXIS 48 (Va. Cir. Ct. Apr. 28, 2011); (citing *Lindeman v. Lesnick*, 268 Va. 532, 538 (Va. 2004)); *see also Gibson v. BSA*, 163 F. App'x 206, 213 (4th Cir. 2006)(stating that "given that no litigation was yet pending between Gibson and BSA at the time the statement was made, we cannot agree that the statement at issue is entitled to an absolute privilege.").

19

Having denied Plaintiff's Motion for Leave to Amend, there is no basis to grant Plaintiff's Motion to Deny Defendant's Motion to Dismiss as Moot.  It too is denied.

D.  Motion to Dismiss

Finally, the Court turns to Defendant's Motion to Dismiss.  As explained above, the Amended Complaint failed to allege news facts beyond those contained in the Complaint that impact whether the claims would survive a motion to dismiss.  As a result, the facts alleged in the Complaint fall short of surviving a motion to dismiss for the same reasons.  Moreover, Plaintiff has failed to file a timely opposition to Defendant's Motion to Dismiss, even after the Court extended Plaintiff's deadline to respond.[7]  For these reasons, the Court will grant the Motion to Dismiss.

**IV.  Conclusion**

The Court will deny Plaintiff's Motion for Administrative Relief, Motion for Leave to Amend, and Motion to Deny as Moot.  The Court will grant Defendant's Motion to Dismiss.

An appropriate Order will issue.

|                      | /s/                               |
| -------------------- | --------------------------------- |
| December 9, 2011     | James C. Cacheris                 |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |

---

[7] The deadline for Plaintiff to respond to the Motion to Dismiss was extended to November 17, 2011.  Plaintiff filed an Opposition to the Motion to Dismiss on December 1, 2011.